UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  12-80199-Civ-COHN
MAGISTRATE JUDGE P. A. WHITE

ALEXANDER PERKINS,               :

     Petitioner,                :

v.                               :          REPORT OF

                               MAGISTRATE JUDGE

KENNETH S. TUCKER,               :

      Respondent.             :
_____

I.  Introduction

Alexander Perkins, a state prisoner currently confined at the Apalachee Correctional Institution, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for robbery with a firearm and felon in possession of a firearm entered in Palm Beach County Circuit Court, case no. 00-003838CFA06.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of this petition with exhibits (DE#1), and supporting memorandum (DE#4), the Court has the response (DE#15) of the state to an order to show cause with multiple exhibits (DE#16), and the petitioner's traverse(DE#17).

## II.  <u>Claims</u>

Construing the arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the petitioner raises two grounds for relief, as follows:

1.  His constitutional rights were violated when the court erred by failing to instruct the jury on the petitioner's alibi defense, and counsel was ineffective for not objecting or otherwise requesting that the court instruct the jury accordingly. (DE#1:13; DE#4:1).

2.  The court erred in failing to hold a full <u>Richardson</u>[1] hearing where the prosecution did not put petitioner on notice that a witness had identified him as a second suspect. (DE#1:16; DE#4:4).

## III.  <u>Procedural History</u>

The petitioner was charged by Amended Information with robbery with a firearm (Count 1), and felon in possession of a firearm (Count 2). (DE#16:Ex.1). It appears from the record that Count 2 was severed pretrial. (DE#16:Ex.14). The petitioner proceeded to trial on Count 1, the robbery offense, where he was found guilty as charged, following a jury verdict. (DE#16:Ex.2). On February 19, 2002, petitioner pled guilty to Count 2, and was sentenced to 634 days, time served. (DE#16:236-238).[2] On April 25, 2002, petitioner

---

[1]<u>Richardson v. State</u>, 246 So.2d 771 (Fla. 1971). In <u>Richardson</u>, the Florida Supreme Court held that where the prosecutor violates discovery rules, a trial court should conduct a hearing to determine the fairness and prejudice to the accused of allowing the use of the undisclosed evidence at trial. <u>Richardson v. State</u>, 246 So.2d 771 (Fla. 1971).

[2]In this Report, when references to the state's appendix are followed by a number, and not an exhibit reference, the number refers to the page number(s) corresponding to CM/ECF's scanned document, noted in the upper right-hand corner

next appeared for sentencing as to Count 1, at which time he was adjudicated a three-time violent felony offender[3] and sentenced to life in prison. (DE#16-1:9-11).

The petitioner appealed, raising the substantive claim underlying claim one, and claim two of this federal petition, as listed above. (DE#16-215:Initial Brief on Appeal). On June 25, 2003, the Fourth District Court of Appeal *per curiam* affirmed the convictions without written opinion. <u>Perkins v. State</u>, 849 So.2d 317 (Fla. 4 DCA 2003)(table); (DE#16:Ex.6).

While petitioner's direct appeal was pending, petitioner returned to the trial court filing a motion to correct illegal sentence and amendment thereto. (DE#1:Ex.E:2). With the state's agreement, the court granted the motion, and found petitioner was entitled to resentencing. (<u>Id</u>.). Resentencing was held on February 4, 2005, at which time petitioner was adjudicated a prison releasee reoffender and sentenced to a term of life imprisonment. (<u>Id</u>.). Petitioner prosecuted a direct appeal of the resentencing judgment. On September 27, 2006, the Fourth District Court of Appeal *per curiam* affirmed the resentencing judgment by written opinion. <u>Perkins v. State</u>, 939 So.2d 1113 (Fla. 4 DCA 2006); (DE#16-3:Ex.8). Rehearing was denied on November 8, 2006. Review to the Florida Supreme Court was granted, the foregoing decision quashed, and the matter remanded to the appellate court for further consideration.

---

of the pleading.

[3]Prior to sentencing, the state filed a notice of its intent to seek the maximum statutory penalty, pursuant to <u>Fla.Stat.</u> §775.082, based on petitioner's qualification as a prison releasee reoffender. (DE#16:184-this page number corresponds to the actual page number on CM/ECF. On April 24, 2002, the prosecution also filed a notice of intent to seek an enhanced penalty pursuant to <u>Fla.Stat.</u> §774.084, based on petitioner's qualification as a violent career criminal, habitual violent felony offender, or habitual felony offender. (DE#16:227).

Perkins v. State, 7 So.3d 529 (Fla. 2009); (DE#16-4:Ex.9). On
October 9, 2009, pursuant to the Florida Supreme Court's remand,
the Fourth District Court of Appeal once again affirmed it's
earlier decision. Perkins v. State, 17 So.3d 1289 (Fla. 4 DCA
2009); (DE#16-3:Ex.10). No rehearing was filed. Thus, since
petitioner did not seek rehearing thereof, he had until November 9,
2009 to file a petition for discretionary review in the Florida
Supreme Court.[4] Consequently, for purposes of the one-year federal
limitations period, petitioner's conviction became final on
November 9, 2009.[5]

Before his convictions became final, the petitioner returned
to the trial court filing his first motion for postconviction
relief pursuant to Fla.R.Cr.P. 3.850 and amendment thereto, raising
numerous claims, including the ineffective assistance portion of
claim one of this federal petition, as listed above. (DE#16-
3:Ex.13). Following a response from the state, the trial court

---

[4]Under Fed.R.Civ.P. 6(a)(1), "in computing any time period specified in ...
any statute that does not specify a method of computing time ... [the court must]
exclude the day of the event that triggers the period [,] count every day,
including intermediate Saturdays, Sundays, and legal holidays [, and] include the
last day of the period," unless the last day is a Saturday, Sunday, or legal
holiday.

[5]In applying the Supreme Court's Gonzalez opinion to this case, it appears
that the petitioner here is not entitled to the 90-day period for seeking
certiorari review with the United States Supreme Court, because after his
judgment was affirmed on direct appeal, petitioner did not attempt to obtain
discretionary review by Florida's state court of last resort-the Florida Supreme
Court, nor did he seek rehearing with the appellate court. See Gonzalez v.
Thaler, ___ U.S. ___, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012)(holding that
conviction becomes final upon expiration of time for seeking direct review);
Jimenez v. Quarterman, 555 U.S. 113, 118-21, 129 S.Ct. 681, 685-86, 172 L.Ed.2d
475 (2009)(explaining the rules for calculating the one-year period under
§2244(d)(1)(A)). See also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct.
1072, 155 L.Ed.2d 88 (2003)(holding that "[f]inality attaches when this Court
affirms a conviction on the merits on direct review or denies a petition for a
writ of certiorari, or when the time for filing a certiorari petition expires.");
Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273 (11th Cir.
2006)(holding that one-year statute of limitations established by AEDPA began to
run 90 days after Florida appellate court affirmed habeas petitioner's
conviction, not 90 days after mandate was issued by that court).

entered a detailed, 6-page order denying the motion and amendment thereto. (DE#16-3:Ex.15). That denial was subsequently *per curiam* affirmed without written opinion, <u>Perkins v. State</u>, 944 So.2d 1001), with the mandate issuing in 2006, prior to petitioner's conviction becoming final. (DE#16-3:Exs.16-17).

Again before petitioner's conviction became final on direct appeal, petitioner filed yet another Rule 3.850 in 2008, once again raising claim one of this federal petition, as listed above. (DE#16-4:Ex.18). The state filed a response thereto, arguing that this Rule 3.850 motion was procedurally barred from review as untimely and successive. (<u>Id</u>.). Thereafter, the trial court entered an order denying the motion based on the state's response. (<u>Id</u>.). That denial was subsequently *per curiam* affirmed without written opinion, <u>Perkins v. State</u>, 75 So.3d 291 (Fla. 4 DCA 2011), with the mandate issuing on January 6, 2012. (DE#16-4:Exs.19-20).

The federal limitations period commenced running less than **2 months** from the issuance of the January 2012 mandate, until February 15, 2012, when the petitioner then came to this court filing the instant habeas corpus petition.[6] (DE#1). Thus, there was less than one year, during which no state postconviction proceedings were pending.

## IV.   <u>Threshold Issues</u>

### A.   <u>Statute of Limitations</u>

In its response to the order to show cause, the respondent rightfully does not challenge the timeliness of the instant

---

[6]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

petition. <u>See</u> 28 U.S.C. §2244(d)(1)-(2). The petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n.9 (11 Cir. 2007). As noted previously, less than one year of the federal limitations period ran during which no state court proceedings were pending. Thus, it appears that this federal petition, filed within a year from the time the petitioner's conviction became final, is timely. <u>See Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

### B. <u>Exhaustion and Procedural Bar</u>

The respondent, however, argues in its response to the order to show cause that the petitioner is not entitled to review on the merits of the claims because they are unexhausted, <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A),[7] and prospectively procedurally barred from federal habeas corpus review because they were not raised in

---

[7] An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert</u>. <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979).

the state forum in federal constitutional terms.[8]

While it appears that a respondent's argument in relation to a portion of claim one and claim two appear to be meritorious, because they may not have been technically exhausted before the state courts, subjecting them to a procedural bar,[9] or because the state court specifically applied a procedural bar, this Court need not reach this difficult question in this particular case. Since the petitioner cannot prevail on the merits of his claims, there is no need to belabor the procedural exhaustion and bar issues here.[10]

Although this Court acknowledges that the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated. See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8 Cir. 1999)(stating

---

[8]It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152 (1996); Duncan v. Henry, 513 U.S. 364 (1995); Picard v. Connor, 404 U.S. 270 (1971).

[9]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

[10]Even if certain claims are technically unexhausted, this Court will exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997; Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), <u>cert</u>. <u>denied</u>, 528 U.S. 846 (1999); <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564 n. 4 (8 Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.").

## V.   <u>Facts Adduced at Trial</u>

Given the nature of the claims raised herein, a recitation of the facts adduced at trial is essential.[11] Rodmodico Rodriguez,[12] the owner of Wash Bowl, a laundromat in Belle Glade, Florida, testified that on April 5, 2002, when he got to the business, he observed Carlos Verdugo and petitioner inside the laundromat. (T.246-47). Two masked men entered the business, and approached the petitioner and Verdugo. (<u>Id</u>.). Shortly thereafter, a gun was placed on Rodriguez' head, and as Rodriguez was beaten by his assailants, they demanded his money, ring and cellular phone, which he turned over to them. (T.255-258). Rodriguez and Gloria, his employee, were eventually pushed to the floor. (<u>Id</u>.). Rodriguez also recalled he and Gloria were later shoved into a bathroom, at which time he heard a single gunshot, which he claims passed very close to his forehead. (T.259-60). After being hit three times, Rodriguez eventually grabbed a level device and ran after the suspects,

---

[11]The letter "T" in this Report followed by a page number, refers to the trial transcript in the state forum which has been provided by the respondent and scanned in CM/ECF as DE#s16-1, 16-2, and 16-3.

[12]Officer Angelo Tsaousis with the Belle Glade Police Department testified Rodriguez identified Wrisper and petitioner from photographic lineups. (T.480-81). She claims, however, that Rodriguez pointed to petitioner as one of the suspects running and taking a mask off, and not one of the individuals doing the laundry. (T.484-85). Rodriguez, however, testified that petitioner was <u>not</u> one of the men wearing a mask, and in fact, was in the laundromat with a codefendant when Rodriguez arrived. (T.273-275,285-87).

breaking the rear glass of the suspects' vehicle, as they were getting in. (T.262-63). Rodriguez testified at trial that petitioner was not one of the masked individuals. (T.273-75).

During a side bar conference, petitioner's counsel argued against an in-court identification of petitioner, preserving the defense's prior argument during a motion to suppress, and arguing further that a <u>Richardson</u> violation had occurred because the petitioner had not been put on notice that Rodriguez could or would identify petitioner as the second suspect. (T.263-68). Rodriguez then provided a proffer outside the presence of the jury. (T.269). During the proffer, Rodriguez explained that two men entered his business, at which time one of them, a mulatto (person with one white and one black parent), took of his mask. (T.270-71). Rodriguez also proffered that the petitioner was the same individual who jumped into the get-a-way vehicle, and was observed by him earlier washing clothes with Verdugo. (<u>Id</u>.). Rodriguez explained that some of the  photographs shown to him during the photographic identification looked like the suspects, but he could not be 100% certain. (T.272).

Following the proffer, the state explained that it had no knowledge that Rodriguez would testify that petitioner was the individual washing clothes with Verdugo. (T.278). Regardless, the trial court ruled that the in-court identification of petitioner would be admitted, and that no <u>Richardson</u> violation occurred because the identification was based upon the witness' independent recollection, and because the witness had never had a prior opportunity to identify the petitioner in court as petitioner had voluntarily waived his own presence at the suppression hearing so as not to provide Rodriguez an opportunity to observe him. (T.278-80,284). Further, the court found Rodriguez' testimony credible.

9

(<u>Id</u>.).

Thereafter, the jury returned to the courtroom, at which time Rodriguez identified petitioner as one of the robbers with Verdugo, stating that petitioner had been in the business before the robbery occurred, and that he had been able to see petitioner's face. (T.285-86). Rodriguez explained that both Verdugo and petitioner had been in the store for more than a half hour before the robbery took place. (T.382-383). Thereafter, Rodriguez recalled that the petitioner, Verdugo, and the other assailants got together inside the store, demanding money from him at gunpoint, before throwing him to the floor. (T.287). After the robbery, Rodriguez was shown two photographic line-ups, but testified that at the time, he was unable to identify any suspects. (T.388-389,395).

Gloria Suarez, an employee at the laundromat, testified that on the day of the robbery, she observed Verdugo entering and exiting the laundromat, and later washing a yellow cape. (T.292-95). The jury was once again excused, at which time a proffer was had from Suarez regarding her identification of petitioner. (T.297). During her proffer, Suarez testified she had never been shown any photographs, and she never picked anyone other than Verdugo. (T.297-98). She also proffered that she could not identify any other individual in the courtroom as a suspect. (<u>Id</u>.).

The proffer ended, and the jury returned, at which time Suarez recalled that on the day of the incident, another person accompanied Verdugo in the laundromat. (T.300-302). She recalled seeing only one revolver. (<u>Id</u>.). Suarez testified that she opened the register so that she could get the money to give to the assailants. (T.300-306). Like Rodriguez, Suarez recalled that Verdugo and another individual were in the laundromat for at least

10

25 minutes before the gun carrying assailant entered the business. (T.310). Suarez also testified that  she looked straight at the individual who was with Verdugo, when he asked for her change. (T.311-312). He was not wearing gloves and touched a washer and dryer, as well as, a soda can which the police later seized. (Id.).

Verdugo, petitioner's codefendant, testified for the prosecution. (T.336). Verdugo explained that he had also been charged with robbery, but had taken a plea, agreeing to testify truthfully against the others involved in the offense, in exchange for only serving one year in a county jail. (T.337-38, 398, 416-17). According to Verdugo, on the day of the robbery, he had been driving around with petitioner, and at some point, Timothy Wrisper and others got into the car and began discussing carrying out a robbery. (T.345-46). Verdugo testified that when he told the individuals he did not want to be involved in a robbery, petitioner pulled out a revolver, put it to Verdugo's head, and told him if he did not go along with the robbery, he would be killed. (Id.). Verdugo explained that he was instructed to go into the laundromat and wash his jacket, and acknowledged being accompanied by an individual wearing a dark hoodie. (T.349). Verdugo, however, testified during cross-examination that he did not know the identity of the individual who accompanied him into the store. (T.406-08). Verdugo acknowledged that he was in the store, "casing" the place, because he knew he was going to return in the afternoon to rob the business. (Id.).

Verdugo further recalled that, after the others entered the business, the owner and employee were ordered to the ground and beaten by both petitioner and Wrispers. (T.351-52). Verdugo did not recall seeing any money being taken out of the register, but did see that jewelry and a watch were taken from the owner. (T.353).

11

Verdugo confirmed that a shot was fired into a closed, confined area where the owner and employee had been placed. (T.353-354). After dropping off the petitioner, Verdugo turned himself into police, informing them of what had transpired. (T.358-60). At that time, Verdugo gave police the names of the individuals that committed the robbery with him. (T.366).

Various officers testified regarding the incident. Lieutenant Luis Paez ("Lt. Paez"), with the Palm Beach County Sheriff's Office, testified that on the day of the robbery he was on patrol and flagged down by Verdugo, and then waited by Verdugo's vehicle until the Belle Glade Police Department officers arrived, at which time Verdugo was turned over to them. (T.425). Detective James Benedict ("Det. Benedict"), with the Belle Glade Police Department testified that he came into contact with Verdugo at the police station. (T.426). Following a meeting with Verdugo, police began looking for petitioner and codefendant Wrisper. (T.427). Lieutenant Matthew Sweet ("Lt. Sweet"), with the Belle Glade Police Department testified that he responded to the scene where Verdugo's vehicle was located, and had it towed and processed for evidence. (T.429-32). Following a show-up at the laundromat, Verdugo was identified as one of the robbers, and was then driven around to see if he could identify the other suspects involved. (T.434-36,466). Lt. Sweet also confirmed that after Verdugo spoke with police, they began looking for petitioner and Wrispers. (Id.).

The defense called Erica Gowie, a corrections officer with the Florida Department of Corrections, and petitioner's former girlfriend, as an alibi witness. (T.500-501). According to Gowie, on the day of the robbery, she and petitioner left for a doctor's appointment at 2:15 p.m. (T.501-502). The appointed lasted approximately 30 to 40 minutes, after which they both went shopping

at the West Palm Beach Mall, and stayed there between a half hour
to an hour. (Id.). Later that night, they went to a movie at the
Regal 18 in Royal Palm Beach, which started at 7:45 p.m., and
returned home around 10:45 p.m. (T.502-503).

## VI.   Standard of Review

"The writ of habeas corpus stands as a safeguard against
imprisonment of those held in violation of the law." Harrington v.
Richter, ____ U.S. ____, 131 S.Ct. 770, 780 (2011). Federal habeas
corpus review provides an important, but limited, examination of
state criminal judgments. The States possess primary authority for
defining and enforcing the criminal law and it is the States who
hold the initial responsibility for vindicating constitutional
rights. Harrington, 131 S.Ct. at 787 ("[T]he basic structure of
federal habeas jurisdiction [is] designed to confirm that state
courts are the principal forum for asserting constitutional
challenges to state convictions.").

Because petitioner filed his federal petition after April 24,
1996, this case is governed by 28 U.S.C. §2254, as amended by the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),
Pub.L. No. 104-132, 110 Stat. 1214 (1996). See Henderson v.
Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003). AEDPA "imposes a
highly deferential standard for evaluating state-court rulings" and
"demands that state-court decisions be given the benefit of the
doubt." Renico v. Lett, ____ U.S. ____, ____, 130 S.Ct. 1855, 1862,
176 L.Ed.2d 678 (2010). Since petitioner seeks habeas relief under
28 U.S.C. §2254 based upon claims that were adjudicated on the
merits by the state courts, this Court is restricted in its ability
to grant relief by §2254(d). Cave v. Sec'y, Dep't of Corrs., 638
F.3d 739, 742 (11th Cir. 2011).

To grant petitioner's habeas petition, this Court must find not only that petitioner's constitutional claims are meritorious, but also that the state court's resolution of the claims:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). <u>See also</u> <u>Cave</u>, 638 F.3d at 742-43.

A state court's decision is "contrary to" clearly established Supreme Court precedent in either of two respects: (1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." <u>Williams v.</u> <u>Taylor</u>, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). To determine whether a state court decision is an "unreasonable application" of clearly established federal law, the Supreme Court recently stated in <u>Harrington</u>:

> The pivotal question is whether the state court's application of the [relevant constitutional] standard was unreasonable.... For purposes of §2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the [relevant constitutional] standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state

> court's decision. And as the [Supreme Court] has
> explained, evaluating whether a rule application was
> unreasonable requires considering the rule's specificity.
> The more general the rule, the more leeway courts have in
> reaching outcomes in case-by-case determinations.

Harrington, 131 S.Ct. at 785-86 (citation and quotation marks omitted)(emphasis in original). When a federal court is determining whether a state court's decision denying relief "was contrary to, or involved an unreasonable application of, clearly established Federal law," as required by 28 U.S.C. §2254(d)(1), the focus is on the federal law that was clearly established at the time of the last adjudication on the merits in state court, and not at the point at which the petitioner's conviction became final. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38, 43-44, 2011 WL 5335411, **3-4 (November 8, 2011).

As the Supreme Court continues to acknowledge, a habeas petitioner has a high hurdle to overcome. See Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011)(acknowledging that Section 2254(d) places a difficult burden of proof on the petitioner); Harrington, 131 S.Ct. at 786-87 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded agreement."); Renico, 130 S.Ct. at 1866 ("AEDPA prevents defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (Section 2254(d) "demands that state-court decisions be given the benefit of the doubt.").

"Section 2254(d) reflects the view that habeas corpus is a

guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error connection through appeal....As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786-87 (internal quotations omitted).

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf., Harrington, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. Harrington, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); Gill v. Mecusker, 633 F.3d 1272, 1288 (11th Cir.

2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, <u>citing</u> <u>Harrington</u>, 131 S.Ct. at 784-85 and <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1254 (11th Cir. 2002)). <u>See also</u> <u>Renico</u>, 130 S.Ct. at 1862 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

"A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. <u>Gill</u>, 633 F.3d at 1291 (*citing* <u>Harrington</u>, 131 S.Ct. at 784). But where the state courts have taken the time and resources to issue an opinion explaining their decision, a federal court must consider it and give it deference. <u>Harrington</u>, 131 S.Ct. at 786-77. <u>See also</u> <u>Stewart v. Erwin</u>, 503 F.3d 488, 493 (6th Cir. 2007)("[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."), *citing* <u>Williams v. Bowersox</u>, 340 F.3d 667, 671 (8th Cir. 2003).

Further, a state court's factual determination is entitled to a presumption of correctness. 28 U.S.C. §2254(e)(1); <u>Smith v. Secretary, Dept. of Corrections</u>, 572 F.3d 1327, 1333 (11th Cir. 2009). This presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir. 2001); <u>Hallford v. Culliver</u>, 459 F.3d 1193, 1199 (11th Cir. 2006). The petitioner bears the burden of rebutting that presumption of

correctness by clear and convincing evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11th Cir. 2007), <u>cert. denied</u>, 553 U.S. 1007 (2008).

As will be demonstrated in more detail *infra*, the petitioner is not entitled to vacatur on the claims presented.[13] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally trial and due process of law. The petitioner therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

---

[13]Briefly, as narrated previously in this Report, the evidence against the petitioner was more than sufficient to support his conviction. The petitioner has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. Further, no denial of due process has been demonstrated. To the contrary, it is clear after independent review of the record that the petitioner received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

Moreover, after independent review of the record in its entirety, any other claims, subclaims, or arguments not specifically addressed in this Report, individually identified, or otherwise subsumed within each of the claims presented herein, have been considered by the undersigned and are found to be without merit, warranting no further discussion.

Notwithstanding, assuming, without deciding, that the state courts during the postconviction proceeding did not address on the merits the exact constitutional claims raised in this federal petition, then the standard established by the AEDPA would not be applicable, requiring a de novo review. See Cone v. Bell, ___ U.S. ___, 129 S.Ct. 1769, 1784 (2009), citing, Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)(de novo review where state courts did not reach prejudice prong under Strickland v. Washington, 466 U.S. 668 (1984)); Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(same). See also Romine v. Head, 253 F.3d 1349, 1365 (11 Cir. 2001), cert. denied, 535 U.S. 1011 (2002). This Court has conducted such heightened review, and the petitioner is nonetheless not entitled to federal habeas corpus relief on any claims in that the grounds raised are meritless.

## Legal Standard-Ineffective Assistance of Counsel

In this habeas proceeding, the petitioner challenges counsel's effectiveness, which is subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard. See Massaro v. United States, 538 U.S. 500, 505 (2003). To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001); Strickland v. Washington, 466 U.S. 668 (1984). Moreover, a habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009). There is a strong presumption that counsel acted

19

effectively. Id. at 690. "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690, 104 S.Ct. 2052.

Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. See also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 778. A habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), citing, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam).

The relevant question "is not whether a federal court believes

the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). "[B]ecause the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>. For the following reasons, Cola's claims of ineffective assistance of counsel fail.

However, it is also well settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5 Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11 Cir.), <u>cert. denied</u>, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).

Decisions whether to call a particular witness or cross-examine certain witnesses are generally questions of trial strategy. <u>See</u> <u>United States v. Costa</u>, 691 F.2d 1358 (11 Cir. 1982). However, where counsel failed to investigate and interview promising witnesses, and therefore "ha[s] no reason to believe they would not be valuable in securing [defendant's] release," counsel's inaction constitutes negligence, not trial strategy. <u>Workman v. Tate</u>, 957 F.2d 1339, 1345 (6th Cir. 1992)(<u>quoting</u> <u>United States ex rel. Cosey v. Wolff</u>, 727 F.2d 656, 658 n.3 (7th Cir. 1984)). Nevertheless, strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually

21

unchallengeable. <u>Strickland v. Washington</u>, 466 U.S. at 690-91.

VII.  <u>Discussion</u>

In **claim 1**, the petitioner asserts that his constitutional rights were violated when the court erred by failing to instruct the jury on petitioner's alibi defense. (DE#1:13; DE#4:1). Petitioner also claims counsel was ineffective for failing to object or otherwise request an alibi defense instruction. (<u>Id</u>.).

<u>Counsel's Failure to Request the Instruction</u>. When the ineffective assistance of counsel claim was raised in the Rule 3.850 proceeding, the trial court applied <u>Strickland</u>, and denied the claim on the following finding:

> The defendant contends that he was denied effective assistance of counsel due to his trial counsel's failure to request an alibi defense. This argument was raised as a fundamental error issue in the defendant's direct appeal and the Fourth District Court of Appeal rejected the claim....
>
> In both the State's closing and the reading of the jury instructions, the jury was advised that it was the State's obligation to prove beyond a reasonable doubt that the Appellant took part in the crime, 'that he was the one who did it.'... The burden of proof was properly presented to the jury. The defendant is unable to satisfy the prejudice prong of <u>Strickland</u>.

(DE#16-4:Exs.12-13).

The foregoing findings were subsequently *per curiam* affirmed on appeal. <u>Perkins v. State</u>, 944 So.2d 1001 (Fla. 4 DCA 2006); (DE#16-4:Ex.16).

22

Even if this Court were to find for purposes of this federal proceeding that trial counsel's failure to request an alibi jury instruction constituted deficient performance,[14] petitioner is not entitled to habeas corpus relief on this claim because he cannot satisfy the second prong of <u>Strickland</u>, prejudice. Consequently, the trial court's finding was not error.

Notwithstanding, the United States Supreme Court has held with regard to a theory of defense jury instruction that "as a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."[15] <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988). The Eleventh Circuit has held that such an instruction must be given when the requested instruction 1) is correct, 2) is not substantially covered by the court's charge to the jury, and 3) deals with some point in the trial so important that failure to give the requested instruction would seriously impair the defendant's ability to conduct his defense. <u>United States v. Vicaria</u>, 12 F.3d 195, 198 (11 Cir. 1994), <u>citing</u>, <u>United States v. Camejo</u>, 929 F.2d 610, 614 (11 Cir. 1991).

---

[14]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established.  <u>See</u> <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

[15]Generally, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. <u>Jones v. Kemp</u>, 794 F.2d 1536, 1540 (11 Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); <u>Bryan v. Wainwright</u>, 588 F.2d 1108 (5 Cir. 1979); <u>Pleas v. Wainwright</u>, 441 F.2d 56 (5 Cir. 1971). A  jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. <u>United States v. Russell</u>, 717 F.2d 518, 521 (11 Cir. 1983). Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law. <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977); <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1290 (11 Cir. 1992).

Here, while the jury was not specifically instructed on the theory of alibi,[16] because counsel never requested the specific instruction,[17] the court's charge when viewed as a whole correctly stated the issues and law and was adequate. <u>See</u> <u>United States v. Russell</u>, 717 F. 2d 518, 521 (11 Cir. 1983). Review of the record reveals that the defense presented by petitioner at trial was an alibi and sufficiency of the evidence defense. As indicated above, in support of the alibi defense, petitioner called his ex-girlfriend Erica Gowie who testified that on the day of the robbery, petitioner had accompanied her to a doctor's appointment from 2:15 p.m., where they remained for approximately an hour, after which they both went to the mall for about another hour. Later that night, they both went to a 7:45 p.m. movie. She then recalled getting home at around 10:45 p.m. (<u>Id</u>.).

In this case, the jury was properly and fully instructed as to the presumption of innocence and the burden of proof in a criminal case. (T.543-58). The jury was also expressly instructed that they should find petitioner not guilty of the crime charged if the state had not proved the case beyond a reasonable doubt. (<u>Id</u>.). Additionally, the court instructed the jury regarding the reliability of the evidence, weighing the evidence and the credibility of witnesses. (<u>Id</u>.). The trial court clearly and correctly instructed the jury that it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. (<u>Id</u>.). Accordingly, the jury was instructed that they

---

[16]The standard jury instruction on alibi provides: "An issue in this case is whether defendant was present when the crime allegedly was committed. If you have a reasonable doubt that the defendant was present at the scene of the alleged crime, it is your duty to find the defendant not guilty." <u>Fla.Std.Jury Instr. (Crim.)</u> 3.04(a), currently <u>Fla.Std.Jury Instr. (Crim.)</u> 3.6(I).

[17]<u>See</u> Transcript at 496, 560.

should find petitioner not guilty if they did not believe the
testimony of the state's witnesses or, the converse, if they
believed the testimony of the defense's alibi witness. It is
generally presumed that jurors follow their instructions. <u>See,
e.g.</u>, <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987).

The evidence admitted at trial of petitioner's guilt was more
than sufficient and included eyewitness and cooperating codefendant
testimony. In light of the instructions actually given to the jury
and the trial transcript, it is clear the jury was aware that it
should find petitioner not guilty if there was any reasonable doubt
he was present at the scene. In other words, the jury knew that if
it were to find the defense witness credible and the alibi defense
believable, petitioner should be acquitted of the offense charged.
Apparently, the jury rejected the defense presented and instead
believed the strong testimony of the state witnesses, as was its
prerogative.[18] Thus, petitioner cannot demonstrate that failure to
provide the alibi instruction resulted in the guilty verdict.
Consequently, he has failed to establish that he received
constitutionally ineffective assistance of trial counsel with
regard to the jury instructions given in this case. <u>See</u> <u>Strickland</u>,
<u>supra</u>. Under the totality of the circumstances present here, the
denial of this claim in the Rule 3.850 proceeding was neither
contrary to nor an unreasonable application of federal
constitutional principles, and thus should not be disturbed here.
<u>Williams v. Taylor</u>, <u>supra</u>.

<u>Trial Court's Failure to Give Instruction</u>. Petitioner

---

[18]It is the responsibility of the jury to resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987), <u>citing</u>,
<u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979).

alternatively claims that the trial court improperly failed to *sua sponte* instruct the jury on an alibi defense. The identical claim was raised on direct appeal and rejected by the state appellate court. This claim is not remediable in a §2254 proceeding. As pointed out herein, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. Jones v. Kemp, 794 F.2d 1536, 1540 (11 Cir.), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); Bryan v. Wainwright, 588 F.2d 1108 (5 Cir. 1979); Pleas v. Wainwright, 441 F.2d 56 (5 Cir. 1971). As to a state court's failure to give an appropriate theory-of-defense jury instruction, such failure without more, is generally a matter of state law and not a violation of the due process clause. Some other circumstances, demonstrating a serious miscarriage of justice, must also be present. See Estelle v. McGuire, 502 U.S. 62, 72-73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(holding that to warrant reversal the error in the jury instructions must be one involving "fundamental fairness" (which is a narrow category) and "'by itself so infect[] the entire trial that the resulting conviction violates due process.'")(*quoting* Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); Frey v. Leapley, 931 F.2d 1253 (8 Cir. 1991). To obtain habeas corpus relief, the error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424 (1962).

For the reasons previously stated above, this alternative argument is meritless. Examination of the instructions provided to the jury in this case in conjunction with review of the trial transcript indicates that no federal constitutional error occurred

here. The instructions actually provided, fairly and correctly stated the issues and law. United States v. Russell, 717 F. 2d 518, 521 (11 Cir. 1983). Moreover, the provided instructions, when viewed in light of the evidence admitted at trial and argument of counsel, adequately apprised the jury of petitioner's theory of defense. There is no question whatever that the jury was well aware that they should find petitioner not guilty if they had a reasonable doubt that petitioner was not the perpetrator of the subject offense in that he had been elsewhere during the time the crime was committed. Thus, the trial court's failure to *sua sponte* provide the jury with a specific alibi instruction did not render the trial proceedings fundamentally unfair.

Accordingly, the state appellate court's rejection on direct appeal of this precise argument was factually reasonable and in accordance with applicable federal principles. The state court's result should not be disturbed. 28 U.S.C.§2254(d); Williams v. Taylor, 529 U.S. 362, 405-06 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002).

In **claim 2**, the petitioner asserts that the trial court erred in failing to hold a full Richardson hearing where the prosecution did not put petitioner on notice that a witness had identified him as a second suspect. (DE#1:16; DE#4:4).

The respondent first argues correctly that this claim is

unexhausted because it was only raised in the petitioner's initial brief on direct appeal as a violation of state law, supported only by citation to Florida cases and rules, and therefore has not been exhausted for purposes of federal habeas corpus review. See, e.g., Baldwin v. Reese, supra; Duncan v. Henry, 513 U.S. 364 (1995)(claim of evidentiary error not exhausted for purposes of federal review where presented to the state courts only as a violation of state law, and not expressly as a violation of due process guaranteed by the Fourteenth Amendment).

As the respondent also correctly contends, dismissal of an unexhausted federal claim is not warranted where further efforts to exhaust the claim in state court would be futile. Givens v. Green, 12 F.3d 1041 (11 Cir. 1994). Since any further attempts by the petitioner to return to the state forum to seek additional collateral review would be dismissed as both untimely and successive, it would be futile to allow her an opportunity to do so, so this claim is thus procedurally defaulted from federal review. Collier v. Jones, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well). In this case, the petitioner has failed to establish cause or prejudice arising from this defaulted claim.

Regardless, the law is clear that the manner in which a state trial court conducts proceedings regarding alleged discovery violations is a matter of state law and not cognizable in a writ of habeas corpus unless the hearing and ultimate ruling rendered the trial fundamentally unfair. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," Alderman v. Zant, 22 F.3d 1541, 1555 (11 Cir. 1994), since the state court "has wide

28

discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." <u>Lynd v. Terry</u>, 470 F.3d 1308, 1314 (11 Cir. 2006). <u>See also</u> <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1509 (11 Cir. 1985)(federal habeas corpus is not vehicle to correct evidentiary rulings); <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543 (11 Cir. 1984)(federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections).

Further, federal courts are bound by a state court's interpretation of its own rules of evidence and procedure. <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1433 (11 Cir. 1985). Admission of prejudicial evidence may support habeas corpus relief only where the evidence is "material in the sense of a crucial, critical, highly significant factor." <u>Id</u>., (*quoting* <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238-39 (11 Cir. 1983)). In <u>Machin</u>, the Eleventh Circuit found that the "surprise" disclosure did not rise to the level of a constitutional due process violation. 758 F.2d at 1433, 1434.

When petitioner argues here that <u>Richardson</u> is intended to protect due process rights, he is merely attempting to transform this ground from a misinterpretation of state law claim to a federal due process claim. Ultimately, petitioner seeks for this court to overturn a state court's evidentiary ruling. As previously stated, federal habeas corpus relief does not stem from state law errors and this court is limited to deciding if a conviction violated the Constitution or federal law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Thus, this Court must accept the state courts' interpretation of state law. Petitioner does not present a basis for federal habeas corpus

relief by mentioning due process while attempting to gain relief from a state court's interpretation of state law.

Also, no showing has been made that there was a constitutional due process violation arising from the identification of petitioner by the victim Rodriguez. In fact, when the issue was raised at trial, the court did conduct a <u>Richardson</u> inquiry. (T.265-84). Petitioner's argument, however, is that the inquiry was insufficient. In Florida, the formalness of a <u>Richardson</u> hearing is not dispositive, and the failure to conduct a proper hearing is not *per se* reversible error. <u>See</u> <u>Tarrant v. State</u>, 668 So.2d 223, 225 (Fla. 4 DCA 1996); <u>State v. Schopp</u>, 653 So.2d 1016 (Fla. 1995). Review of the record reveals that the state had no knowledge that Rodriguez would be identifying petitioner as the individual who was with Verdugo, at the laundromat washing the yellow cape prior to the robbery. Further, the trial court granted counsel a mid-trial short continuance so that he could properly prepare for questioning the witness and then formulating a vigorous cross-examination in light of that witness' testimony. In fact, as aptly noted by the court, during the suppression proceeding, counsel requested that petitioner's presence be waived so that Rodriguez would not see him prior to trial. (T.267). Further, Rodriguez was never questioned prior to trial whether he could, in fact, identify the petitioner. (T.268). At the conclusion of the inquiry, the court found in pertinent part, as follows:

> I believe he [Rodriguez] has independent recollection and - of the defendant and it's based upon his independent recollection and not based upon -- there was never any suggestion of any pretrial impermissible suggestive lineups. This witness has never been given the opportunity to identify this defendant in court before. You waived his presence during the suppression hearing. He could have identified him during the suppression hearing. You would have learned it that way. You

30

voluntarily chose to strategically leave Mr. Perkins
[petitioner] out of the courtroom during that suppression
hearing, so you can't now complain that this is the first
time you're learning about it. And thirdly, I find Mr.
Rodriguez's testimony credible in that he did not
identify Mr. Wrisper and the mere fact that he's sitting
next to you at counsel table, if that was going to be the
basis or motivation for him to pick out Mr. Perkins now,
he would have done so the same thing with Mr. Wrisper at
his trial and he admitted he could not positively
identify Mr. Wrisper so, in my mind, that gives this
testimony significant credibility and I don't believe the
fact that he's sitting at counsel table and he's the only
black person in the courtroom is going to taint his
identification, so I am going to allow it.

(T.278-80).

Accordingly, it is evident from the record above that the
court conducted a <u>Richardson</u> inquiry and found no violated existed.
Further, such fact in no way hampered the defense presented.  Trial
counsel conducted thorough cross-examination of Rodriguez with
regard to his observations, attempting to discredit his
observations. Even if the trial court erred in this regard, such
error had no substantial and injurious effect or influence in
determining the jury's verdict. <u>See</u> <u>Sims v. Singletary</u>, 155 F.3d at
1312, <u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993). Thus,
the petitioner was not denied a fundamentally fair trial.
Consequently, the rejection of the claim in the state forum was not
in conflict with clearly established federal law or based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding. Relief must therefore be
denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529
U.S. 362 (2000).

Even if the prosecution in this case were viewed as having
committed a discovery violation with respect to the disclosure that

31

Rodriguez could identify petitioner, it was not sufficient to warrant federal relief under Brady[19] and its progeny. Further, there is no indication whatever in the record that the trial was rendered fundamentally unfair, warranting habeas corpus relief. See Miller v. Singletary, 958 F.Supp. 572, 578-79 (M.D. Fla. 1997)(holding that habeas claim that petitioner's right to discovery was violated when state trial court denied motion to re-depose state's key witness did not state constitutional claim, but rather was purely matter of state law and thus was not cognizable on federal habeas review). This is especially true in light of the more than sufficient evidence of the petitioner's guilt presented at trial.

As narrated above, the evidence was more than sufficient to the petitioner's conviction so that any alleged discovery violation or error is of no consequence. See Brecht v. Abrahamson, 507 U.S. at 623, quoting, Kotteakos v. United States, 328 U.S. at 776. (1946). In conclusion, given the strength of the evidence against the petitioner, the discovery violation was not material in that there is no reasonable probability that had it been disclosed earlier, the petitioner might have been acquitted. United States v. Alzate, 47 F.3d 1103, 1109-1110 (11 Cir. 1995). Consequently, the claim is without merit.

Moreover, the record reveals that defense counsel was able to lodge a vigorous defense, attacking the evidence and the credibility of the state witnesses, which resulted in the petitioner being convicted not of armed robbery, but of the lesser-included-offense of robbery. The state court summary denial of the claim which was exhausted on direct appeal was proper and should not be disturbed here. Williams v. Taylor, supra.

---

[19]Brady v. Maryland, 373 U.S. 83 (1963).

To the extent petitioner asserts that the cumulative errors of counsel warrant vacatur of his convictions, he is entitled to no relief on this claim. As will be recalled, when viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally fair trial and due process of law. The petitioner therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

## VIII. Evidentiary Hearing

Petitioner's request for an evidentiary hearing on any or all of the claims raised in this federal petition should be denied. As noted by the Supreme Court in Cullen v. Pinholster, ____ U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011), "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Where, as here, the Court has already determined that habeas relief is barred by §2254(d) because the state courts reasonably decided petitioner's claims on direct appeal and/or in postconviction proceedings, no amount of new

33

evidence in support of the underlying claims can impact the result.

IX.   <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." <u>See</u> Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. A §2254 petitioner "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." <u>See</u> <u>Fed.R.App.P</u>. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. <u>See</u> 28 U.S.C. §2254 Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2254 petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); <u>see</u> <u>also</u> <u>Slack v.</u> <u>McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). After review of the record in this case, the Court finds the petitioner has not demonstrated that he has been denied a constitutional right or that the issue is reasonably

34

debatable. <u>See</u> <u>Slack</u>, 529 U.S. at 485; <u>Edwards v. United States</u>, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## X.   <u>Conclusion</u>

For the foregoing reasons, it is that this federal habeas petition be denied, a certificate of appealability be denied, and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 31st day of July, 2012.


_____
UNITED STATES MAGISTRATE JUDGE

cc: Alexander Perkins, <u>Pro Se</u>
    DC#W04301
    Apalachee Correctional Institution-East Unit
    35 Apalachee Drive
    Sneads, FL 32460

    Mitchell A. Egber, Ass't Atty Gen'l
    Office of the Attorney General
    1515 North Flagler Drive, #900
    West Palm Beach, FL 33401-3428